TARA K. MCGRATH
United States Attorney
MELANIE K. PIERSON
Assistant U.S. Attorney
California Bar No. 112520
STEPHEN DA PONTE
Special Assistant U.S. Attorney
Florida Bar No. 58454
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Email: Melanie.Pierson@usdoj.gov
Email: Stephen.DaPonte@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>MICHAEL HART,<br><br>       Defendant. | Case No. 24-CR-0383-JM<br><br>**GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:**<br>  **1. TO COMPEL DISCOVERY**<br>  **2. TO PRESERVE EVIDENCE**<br>  **3. TO FILE FURTHER MOTIONS**<br><br>DATE: April 29, 2024<br>TIME: 10:30 a.m. |

COMES NOW the plaintiff, United States of America, by and through its counsel, United States Attorney Tara K. McGrath, Assistant U.S. Attorney Melanie K. Pierson, and Special Assistant U.S. Attorney Stephen Da Ponte, and hereby files its Response and Opposition to Defendant Hart's Motions to Compel Discovery, to Preserve Evidence and to File Further Motions. Said response is based on the files and records of the case.

    DATED: March 22, 2024          Respectfully submitted,

                                        TARA K. MCGRATH
                                        United States Attorney

                                        /s/Melanie K. Pierson
                                        Assistant United States Attorney

                                        /s/ Stephen Da Ponte
                                        Special Assistant U.S. Attorney

I.
## STATEMENT OF THE CASE

On February 29, 2024, a thirteen-count indictment was filed in the Southern District of California, charging Defendant Hart with Conspiracy, in violation of Title 18, United States Code, Section 371; and Importation Contrary to Law, and Sale of Merchandise Imported Contrary to Law, both in violation of Title 18, United States Code, Section 545.

On March 4, 2024, the defendant was arrested on a warrant issued pursuant to the indictment and brought before the Court for his initial appearance and arraignment. The Court set the Motions Hearing and Trial Setting for March 25, 2024, at 11:00 a.m. On March 13, 2024, the defendant was released on bond.

On March 18, 2024, Defendant Hart filed a Motion to Compel Discovery, Preserve Evidence, and to File Further Motions. The United States responds to those motions herein. On March 22, 2024, the hearing date was continued to April 29, 2024.

II.
## STATEMENT OF FACTS

On October 18, 2022, Defendant Hart entered the United States at the San Ysidro POE as the driver, sole occupant, and registered owner of a white 2008 Dodge Caravan, bearing California license plates. As the vehicle was waiting in pre-primary, a Customs and Border Protection (CBP) Officer asked Defendant Hart if he had anything to declare. The defendant twice responded that he only had his tools in the van. The CBP

*Response in Opposition to Motion to Compel Discovery*            2            *24-CR-0383-JM*

Officer then inspected the van and noticed a paint tarp covering boxes that were located on the interior floor of the van. The CBP Officer observed tools and other miscellaneous items on top of the paint tarp. When the CBP Officer moved the paint tarp, he discovered boxes with labels that described their contents as Freon 404A from China. When Defendant Hart pulled up to the primary inspection booth, the inspector asked him if he had anything to declare. Defendant Hart said "No, just materials and tools." In the comments section of the referral slip, the primary inspector wrote "Has hidden undeclared freon," "going to El Cajon," "NDx2" (twice made a negative declaration). The vehicle was then referred to Secondary for further inspection.

In the secondary lot, a CBP Officer located a total of ten boxes, each containing one canister identified as Freon 404A. Each canister contained a mixture of hydrofluorocarbons (HFCs), including: HFC-143a, HFC-125, and HFC-134a gases, all of which are regulated HFCs. Federal regulations limit the importation of regulated HFCs (including blends) to individuals who have been granted a consumption allowance by the Environmental Protection Agency (EPA). A search of the EPA database of individuals granted a consumption allowance for regulated HFCs in the United States showed that Defendant Hart holds no such allowance. Because these regulated HFCs were imported without a consumption allowance, they may not be legally sold in the United States.

After being advised of his Constitutional rights and waiving his rights in writing, Defendant Hart stated that he worked in construction, repairing and installing air conditioning units. He stated that his

girlfriend ordered the refrigerant canisters from a store in Tijuana and had them delivered to her house in Mexico. Defendant Hart said that he would pay his girlfriend back for the cost of the cannisters and that he brought 10-15 Freon canisters from Mexico into the United States every week for the past two months. Defendant Hart claimed to use some of the canisters himself when he repaired air conditioning units, and he said he sold the rest of the canisters to others in the air conditioning industry.

Inspectors also located four receipts for the purchase of HFCs in Tijuana on earlier dates, bearing the name of the defendant's girlfriend. The defendant's phone contained records of payments from the defendant to the girlfriend for the HFCs. Subsequent investigation revealed that the defendant was selling the smuggled HFCs on the internet, on sites such as OfferUp.

III

STATUS OF DISCOVERY

On March 6, 2024, the defendant was provided with a disc containing T Mobile phone and phone message records along with messages and images downloaded from the defendant's cellular phone, OfferUp business records, Cool Air delivery tickets and invoices, twenty-eight grand jury exhibits, the video recording of his interview at the Port of Entry, interview recordings of customers, photos and reports from the agents and inspectors at the Port of Entry, seizure reports, the referral slip, a report of his criminal history, and a report of his border crossings.

On March 7, 2024, the defense was provided with a disc containing his Port of Entry video of his encounters with inspectors on October 18, 2022, along with the records in the government's possession regarding another witness.

On March 8, 2024, the defense was provided with a USB drive containing the complete download of the defendant's cellular phone.

On March 15, 2024, the defense was provided with the search warrant and search warrant return for the defendant's OfferUp account.

IV

POINTS AND AUTHORITIES

A. THE GOVERNMENT HAS AND WILL COMPLY WITH RULE 16 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.  ANY ADDITIONAL DISCOVERY DEMANDS OF THE DEFENDANT SHOULD BE DENIED.

The Government, to date, has provided discovery consisting of approximately 939 pages of documents along with 2 video and 3 audio recordings. The discovery provided to date is in excess of that required by Rule 16 of the Federal Rules of Criminal Procedure. The Government will continue to comply with the rules concerning discovery.  The defendant's specific requests are discussed below.

1. The Government Has Already Disclosed Information Subject to Disclosure under Rule 16(a)(1)(A)and (B) of the Federal Rules of Criminal Procedure.

The Government has already disclosed the written and recorded statements of the defendant, as well as the substance of any relevant oral statements he made in response to questions by Government agents, and the rough notes of his interview. The defendant is not entitled to summaries of oral statements of the defendant made to persons not known

by him to be Government agents, and the memorialization of any such statements in a written report does not make them discoverable as written statements of the defendant. <u>United States v. Hoffman</u>, 794 F.2d 1429, 1432, n.4 (9th Cir.1986).

The documents relating to the defendant's encounter with inspectors and agents at the border with the HFCs have been produced, as well as the videos from the Port of Entry and the video of the defendant's interview with the agents. The defendant's text messages and OfferUp messages with customers have also been disclosed. No dispatch tapes exist because the offense occurred at the Port of Entry.

2. <u>The Government Will Comply with Rule 16(a)(1)(D)</u>.

The Government has already provided the defendant with a copy of the printout of the results of the database check for evidence of prior convictions.  Once the witnesses the government intends to call in its case in chief are identified, records of any evidence of prior convictions for those individuals will be disclosed.

The Government is well aware of and will fully perform its duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment, as well as its duty under <u>Giglio v. United States</u>, 405 U.S. 150 (1972) to provide information on any benefits provided to Government witnesses in exchange for their testimony and impeachment material. The Government agrees to provide this information at least one week prior to trial, after all the trial witnesses have been identified.

3. <u>The Government Will Comply with Rule 16(a)(1)(E)</u>.

The Government will permit the defendant to inspect and copy or photograph all books, papers, documents, photographs, tangible objects, buildings, or places, or portions thereof, which are within the possession, custody, or control of the Government, and which are material to the preparation of the defendant's defense or are intended for use by the Government as evidence-in-chief at trial or were obtained from or belong to the defendant, and agrees to preserve such evidence during the pendency of this proceeding.

The defendant is not entitled to all evidence known or believed to exist which is, or may be favorable to the accused, or which pertains to the credibility of the Government's case.  As stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that the "prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id., 611 F.2d at 774-775 (citations omitted). *See also* <u>United States v. Sukumolachan</u>, 610 F.2d 685, 687 (9th Cir. 1980) (the Government not required to create exculpatory material that does not exist); <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure).  All physical evidence collected to date will be preserved.

*//*

*//*

### 4. The Government Will Comply with Rule 16(a)(1)(F).

The Government has provided the defendant with the results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession of the Government that have been performed to date, and will continue to provide any further such reports that by the exercise of due diligence may become known to the attorney for the Government and are material to the preparation of the defense or are intended for use by the Government as evidence-in-chief at the trial. The Government notes the defendant's request for any laboratory analysis conducted "on the narcotics" (ECF 14 at 5) and wishes to clarify this case deals with the illegal importation and sale of HFCs and does not involve narcotics. The reports of testing performed on the HFCs have been disclosed.

### 5. The Government Will Comply with Rule 16(a)(1)(G).

No reports of experts have been prepared to date. The Government will provide any summaries of expert testimony as such evidence is identified as the case proceeds to trial, but no later than two weeks prior to trial.

### 6. Jencks Material.

Production of witness statements is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies on direct examination. United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir.), cert. denied, 454 U.S. 902 (1981). Indeed, even material believed to be exculpatory and therefore subject to disclosure under the Brady

doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. *See* <u>United States v. Bernard</u>, 623 F.2d 551, 556 (9th Cir. 1979).

As a practical matter, the Government has disclosed the reports of the investigation, so advance Jencks material (with the exception of transcripts of grand jury testimony) has already been provided.

7. <u>Prior Similar Act Evidence.</u>

The Government is aware of prior instances where Defendant Hart previously imported HFCs into the United States without declaring them, and subsequently sold the smuggled HFCs. The evidence relating to those prior illegal importations has already been disclosed to the defense. While the Government believes that such evidence is admissible as uncharged overt acts within the charged conspiracy, the Government hereby provides notice that it may also seek to admit evidence under Rule 404(b) relating to those other instances of the illegal imports and subsequent sales of the smuggled HFCs. To the extent that any such additional evidence is later obtained, it will be disclosed and the defendant will be provided additional notice.

8. <u>Henthorn Material.</u>

The Government will conduct a review of the personnel files of the federal agents involved in the case, and any impeachment material falling within the purview of <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.1991) will be disclosed.

//

9. <u>Impeachment Information.</u>

The defendant may request various categories of impeachment evidence, including bias or motive to lie, evidence of criminal investigation or convictions, and evidence affecting perception. The Government has disclosed the evidence currently in its possession that falls into this category. The Government will continue to disclose such evidence in compliance with its continuing obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972) no later than one week before trial, when the witnesses for trial have been identified.

B. <u>ALL EVIDENCE CURRENTLY IN THE POSSESSION OF THE GOVENRMENT WILL BE PRESERVED.</u>

The United States does not object to the request for preservation of evidence and has advised the case agents to maintain custody of all physical evidence in the possession of the Government.

C.   <u>FURTHER MOTIONS</u>

The Government has no objection to the filing of further motions, so long as those new motions are based on newly disclosed evidence, or the defendant provides an adequate explanation of why the motions could not be filed in a timely manner. The Government requests that the court not issue an order permitting the filing of all additional motions, but instead review each request for further motions on its own merit.

//

//

//

V.

CONCLUSION

The United States respectfully requests that the court deny the motion to compel discovery and for filing of further motions, to the extent they are opposed herein.